Good morning, Your Honors. Raul Montes for the petitioner, Mr. Aguilar-Linares, Your Honor. I'd like to point out that as to the first stop of September 8, 2007, involving the I-213, that the question of identity can be suppressed when it relates to evidence, as opposed to jurisdiction. And the case that I'll point out, the U.S. v. Ortiz-Hernandez, 427 Bedford 567, 9th Circuit, 2005. And I refer there to the dissent by Justice – by other judge, W. Fletcher. Your Honors, in this case, we have – and I'd like to reserve two minutes for rebuttal. Thank you, Your Honor. We have two situations here. First, September 8, 2007, the Temecula Police Department stopped this gentleman for his license. Apparently, it was obstructed by a ball for a trailer hitch. Wait, what did they stop him for? His license plate. His license plate. His license plate. You know, in the back, he had a little ball for the trailer hitch. Okay. That supposedly was obstructing part of it. That was the first time it was stopped. That's the first time. The second time, Your Honor, it's – the record's a little unclear, but apparently, he was cited for driving without a license. What was the basis for them stopping him? Driving without a license, if we could – Well, no, how could they know that? They couldn't have stopped him for driving without a license. So how did – why did – what was the reason they stopped him the second time? From what Agent Pritchard testified, Your Honor, there was a traffic violation. What was it? What was the traffic violation? It was never – it was never identified, Your Honor, in the record. Was there any evidence he was stopped because of his race or the way he looked? Well, Your Honor, those facts are facts that can be reasonably inferred from the record based on the obviousness of what happened and what the totality of the circumstances. In this case, we just have basic – Where in Temecula was he stopped? In Temecula, he was stopped by the – oh, Your Honor, let's see. Well, the police were looking at a gas station, and then he drove from the gas station, and he made a turn, and the officers that were at the gas station followed him and made the turn and subsequently, about a few blocks later, stopped him, Your Honor. I do not know exactly the – but it was in the area of that gas station where he was filling up with gas and where they first observed him. So this is about the denial of a suppression motion? Yes. Okay. And it was the form I-404 that you wanted suppressed? As to the second motion to suppress, yes, Your Honor. We had to do two motions to suppress because – I thought your argument was that the Board didn't use the right analysis in terms of reviewing whether this was an egregious violation of the Fourth Amendment. Well, yes, Your Honor. First, we have the September 8, 2007 stop and the I-213. Then we have the November 13, 2008, a little over a year, stop and the I-44. And we moved to suppress as to both of them. Now, one of the things I think that happens here is that as to the second motion, there was nothing in the I-44 about alienage until we got to the hearing. And Officer Pritchard testified. Then she, for the first time, came out with the statement that she had asked him about where he was born, and he said he was born in Mexico. At that point, Your Honor – Did you move to suppress her testimony? Well, we objected, Your Honor, on the grounds that that was new information that had not been presented in the I-44. Because if I'm having trouble with this whole scenario of – as I understand it, and I think I'm talking about the second arrest, the Agent Pritchard arrest, right? Yes. Okay. As I understand it, he stopped for an unspecified traffic violation. Traffic violation. Yes, traffic. Then he's taken and put into the police officer's car, right? That's correct. Okay. Did they give him his Miranda rights? No, they didn't. And instead, they just called the Border Patrol? Yes, ostensibly to act as an interpreter. As part of their policy. Yes, that was – Were they working together? Yes, it's after they were working together on the 287, but also – but it's conceded by Officer Pritchard that there was an understanding between them and the police that any time a person presented himself and spoke Spanish, then they could call the Border Patrol to act as interpreters. But if they're going to take him and put him in a car and have him subject to interrogation, don't they have to give him his Miranda rights? Yes, it's our position that they would, Your Honor, that they would have to give him Yes, basically. Because Miranda doesn't – Miranda's Fifth Amendment, and that applies to persons, not citizens, right? Not just citizens. Am I right? That's correct. That's correct. Yes, Your Honor. So when – He did invoke his Miranda rights, didn't he? Yes, he did. He tried to explain that, look, I have papers. I'm scheduled to go to court. These are immigration – which would indicate to anybody that he's already been stopped before and he's been placed in deportation proceedings. But since they didn't – they kept on asking him questions regarding where to get the $1,600 and he produced a stub. Then he said, well, I don't want to talk anymore. I want my attorney to be present. And that's one of the interesting things, Your Honor, is why – if he has immigration papers – and granted, it's not a lawful residency or anything, but these are papers from the immigration service that show that he's already in deportation proceedings. He's out on a $25,000 bond, immigration bond. Why would they continue or take him to the Border Patrol station the second time? There was no need to do that. He had already been investigated the year before, and apparently the reason was because they were going to determine whether or not he was in violation of the terms of the bond, I guess because he had that $1,600. And apparently the officer was of the opinion that someone without a proper social security number should not be receiving checks from the disability. Didn't your client voluntarily admit to not being a United States citizen as he was being questioned by Agent Richard?  No, he was under arrest already. Well, I guess it depends on how you define arrest. The law allows the Department of Homeland Security to briefly detain individuals to ascertain whether they're an alien, and I think Agent Richard would probably say that was what was happening. Well, I would, Your Honor, once she determined that he had been in place in deportation proceedings and that he had the papers with him. And that was after he admitted he was an alien. No, that was before, because as I understand, she went and those papers were given to her by the Riverside County Sheriff's Department. Yeah, the record shows that he was not arrested until after she called to find out about the status of his immigration case. But before that, he freely admitted he was an alien. Well, no, Your Honor, I think it all has to go back to, you know, why he was stopped. I mean, if he stopped, you know, was unlawful, then all this, you know. Well, yeah, the one was because his license plate was obscured by the ball on the trailer hitch. Yes. The other one, we don't have, at least I don't have anything in the record, and Judge Fisher asked that question. Yes. Or Judge Wardlaw, what was he stopped for? And the record's not clear. You're not able to tell us what he was stopped for. Yeah, the record's not clear on that, Your Honor, and he was cited for not having a license. That was the ultimate. Driver's license. Driver's license, that's correct. There was some initial violation that's alluded to beyond the driver's license, some reason for the initial traffic stop. But obviously, they were minor because he wasn't even cited with any of those violations. And then Officer Pritchard was called. And so our position is that, well, I have one minute, Your Honor. But, you know, if they're acting together, which from the facts that can be from this case, it can be determined that they are, then they cannot. My question is, are they lawfully acting together? That's why I was under one of the federal programs. Yes. Well, in this case, obviously, it's if they're only relying on pretextual arguments to stop somebody, then I would say that those, and the real intent is to have this person detained for immigration purposes, then that is unlawful.  Thank you, Your Honor. We're over your time, so why don't you sit down and we'll see if you need another self to respond. Hi, Your Honor. Hi, Ms. Hanford. Hi again. The facts of this case are simple. Do you want to introduce yourself for the record again? Absolutely. May it please the Court, Nancy Cantor on behalf of the Attorney General. You won't get credit or get paid if you don't. Good point. The facts of this case are simple. In November 2008, Petitioner and two passengers were stopped by members of the Riverside Sheriff's Department as part of a routine traffic stop. From the initial investigatory stop to the ultimate decision to detain Petitioner and take him into custody, the actions of both the Riverside Sheriff's Department and Customs and Border Control was proper and within the bounds of the Fourth Amendment. Okay. So this case is about whether or not there was an egregious violation of the Fourth Amendment. Isn't that correct? Correct. Okay. So we haven't been talking about that much so far. Okay. So we are reviewing the BIA decision, correct? Yes. Okay. And the standard for a Fourth Amendment egregious violation is set forth in Lopez-Rodriguez v. McKaysey, correct? Correct. Okay. And where in the BIA opinion do they apply that standard? Well, this Court reviews the BIA. This Court reviews whether or not there's a Fourth Amendment violation. I know, but what did the BIA have to say about it? They dealt with the motion to suppress, didn't they? Correct. And they had before it the issue of a Fourth Amendment egregious stop. Isn't that the basis for suppression? Right. Well, where did they apply Lopez-Rodriguez? Well, the Board did not cite Lopez-Rodriguez. It didn't even apply it. It did apply. No, it didn't. No, it didn't. It didn't apply the correct standard. Instead, the test for miscellaneous evidence in removal proceedings is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process. Is that the test for an egregious or deliberate violation under Lopez-Mendoza? The Court replied Lopez-Mendoza. I thought Your Honor was asking about Lopez-Rodriguez. I am. Okay. Where did they apply it? Well, the Court looks to INSB Lopez-Mendoza to determine whether there's an egregious violation of its constitutional right. Does that apply the Lopez-Rodriguez standard? I believe, Your Honor, it does. Well, where is it articulated? The Court might not have, I mean, the Board might not have specifically said the standard. Well, wait a minute, counsel. It says we cannot, I'm reading from the BIA opinion, we cannot conclude that the immigration judge erred in admitting Form I-44 into evidence and in relying on the testimony of Agent Pritchard. The test for admissibility of evidence in removal proceedings is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process. The I-44 is clearly probative and its use was fundamentally fair as Agent Pritchard prepared the form and was available for the respondent to cross-examine. That's not the Lopez-Rodriguez standards. The question is whether there was a Fourth Amendment violation. Absolutely, Your Honor, but – And under Gonzales-Rivera, under controlling Ninth Circuit law, a fundamentally unfair Fourth Amendment violation is considered egregious regardless of the probative value of the evidence obtained. So how do we – what are we reviewing? We're supposed to ignore the BIA and apply those to Ninth Circuit cases on our own? I disagree. We don't need to – the government's position today is that the Court examined the admissibility of Agent Pritchard's evidence and the I-44 in the context of whether or not the exclusionary rule requires it to be suppressed. The first page of the Board's decision clearly cites the exclusionary rule and that applies – it does not apply in deportation proceedings absent egregious circumstances which transgress the notions of fundamental fairness. That's true. It cites Lopez Mendoza's in that regard, right? Yes, and it also cites this Court's decision in Orr-Hiraji. Yes. And when you go back to after the – But the standard that their – but their rationale isn't applying it. It isn't looking to see whether there was a Fourth Amendment violation and whether it was egregious. Let me – The whole issue that would be presented, and the IJ did talk about it, was whether there was a valid reason to stop and whether there was any – you know, you could arguably say whether there was egregious behavior in the setup that they have between the two agencies. But whether the thing – whether the evidence is probative or not isn't the issue. Well, Your Honor, on page 2 of the Board's decision, the second full paragraph, the Board is looking into the reasonableness of the officer's conduct in the broader context of whether or not there is a Fourth Amendment violation. I might not have said so as artfully as you or I would have liked, but the Board is clearly – is clearly looking at the admissibility of Agent Pritchard's testimony and the I-44 in the context of whether this comports with a Fourth Amendment – with the Fourth Amendment protection. When we look into the Fourth Amendment suppression, usually it is suppression of extremely probative evidence. That's why the defendant in a criminal case is trying to keep it out. Okay? It can be confessions. It can be damning evidence of drug dealing or whatever. So to say whether or not the I-44 is probative is the non sequitur in analyzing the Fourth Amendment. The issue is how did they come by the I-44. Correct? Correct. How did they get it? Okay. And they did a traffic stop and they had him interrogated by the Border Patrol in conjunction with the police. Those are the Fourth Amendment facts that are relevant. Correct. So where are they dealing with those facts and saying that they were either not a constitutional violation or that they certainly weren't an egregious violation? Where on page 2 are you pointing me to? Well, the paragraph that starts on November 13, 2008, Agent Pritchard called in to assist the Sheriff's Department in translating following the traffic violation. The Board is recounting the facts which took place that led to the creation of the I-44. Yes. And they're looking at this in the broader context of whether or not there was a Fourth Amendment violation. So one question that this description gave rise to me was doesn't the BIA have to look at the entire law enforcement conduct that took place that ended up with the creation of the I-44? The BIA here only looks at Agent Pritchard's activities. Agent Pritchard's activities followed upon what the petitioner points to as a contextual stop for which he was not even cited on the basis that he was stopped. So I think not only did they not correctly point to looking at the law enforcement conduct and whether or not they committed a Fourth Amendment violation, I think they also committed a Fifth Amendment violation. But that's not raised by the petitioner. But they don't even look at the entirety of the law enforcement conduct. Your Honor. When you look at a Fourth Amendment violation, the subjective motivations of the officers in the criminal context, at least this Court has held, are not important. We know that. It's an objective test. Right. Right. And here there is objective. Petitioner points to no objective evidence outside of his testimony and his  You are not the BIA. Absolutely, Your Honor. What you're just saying isn't in the BIA opinion. If you look at page 2, it starts off with what I read. You point me to paragraph 2. It talks about what happened. Then the conclusion is in the third paragraph, the respondent has failed to establish that the immigration judge was clearly erroneous in finding Agent Pritchard more persuasive than Respondent's evidence. Correct. That does not address the Fourth Amendment issues. But the very last sentence of that page says Respondent failed to establish that he suffered an egregious violation of his constitutional rights. That would warrant exclusion of this evidence. Let me ask a question. Can I just finish? Where did they say that? That's the very last sentence on page 2 of the BIA's decision. It's the second sentence of the last paragraph of page 2. I see it. So they're looking in the context of a larger Fourth Amendment violation. Yes. My question was didn't the immigration judge address these issues with the proper standard and did not the BIA adopt the findings of the immigration judge? I believe Your Honor is correct. The court can look at the Fourth Amendment. The court reviews whether or not there's been a Fourth Amendment violation de novo. The agency's findings of facts are reviewed for substantial evidence. The immigration judge looked at the evidence and conducted the correct analysis. The board looked at it in the context of whether there was a larger egregious violation of the Fourth Amendment. So here the court reviews de novo, but it's found by both the agencies, found by the agency's decision and the immigration judge's decision to the extent the board adopts or affirms parts of those decisions. And I believe they did, according to my reading of the record, they did adopt the factual findings of the immigration judge. And it's the question is did they really do that or did they not, notwithstanding the boilerplate language they used that said they did? Correct, Your Honor. I see that I'm out of time. Thank you. You're not going to answer the question? No, I agreed affirmatively with Your Honor. Okay. That's the answer? Okay. Absolutely. Thank you. I'd like to know what is the relief you're asking for? That the motion for suppression be granted, Your Honor, that the I-44 not be evidence in this case. And then what would be the posture of proceedings against your client? Well, then based on this, then we would, well, how can I say this? At that time he was married to a United States citizen, so we were going to proceed under a certain fashion. Were you going to, what was the underlying claim for relief, cancellation? Well, yes, that would be one of the claims, Your Honor, because he has a U.S. citizen child, even though he's now divorced from the spouse, the U.S. citizen spouse, but that's not part of the record, obviously, since the time is up. But that would be, the other thing is we could not do the I-485 adjustment of status because the father filed the application in, I believe it was August of 2001, and the deadline was April 30th, 2001, to do the adjustment of status. So his relief would Do we have an adjustment of status pending? No, Your Honor. He could not adjust status because under 245-I he could not waive the initial illegal entry. He would have to go through the counselor processing. And the other thing that he, we have talked about, even though that's not part of the record, Your Honor, would be whether he qualifies under protection under the United Nations Convention Against Torture, based on facts in Mexico, but that's something for the future, Your Honor. All right. Thank you, counsel. Thank you, Your Honors. Great. Aguilar and Linares are being submitted.
judges: Dawson, Wardlaw, Fisher